# No. 21-16210

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

CHILDREN'S HEALTH DEFENSE,
a Georgia non-profit organization,
*Plaintiff-Appellant*,

v.

META PLATFORMS, INC., a Delaware corporation;
MARK ZUCKERBERG, a California resident;
SCIENCE FEEDBACK, a French corporation;
THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.,
a Florida corporation; and DOES 1-20,
*Defendants-Appellees*.

Appeal from the Judgment of the United States District Court
for the Northern District of California, Case No. 3:20-cv-05787-SI
Honorable Susan Illston, United States District Judge

# APPELLANT'S SUPPLEMENTAL MOTION FOR JUDICIAL NOTICE

ROGER I. TEICH
Cal. State Bar No. 147076
290 Nevada Street
San Francisco, CA 94110
Telephone: (415) 948-0045
rteich@juno.com

JED RUBENFELD (*pro hac vice*)
1031 Forest Road
New Haven, CT 06515
Telephone: (203) 387-2505
rubenfeldjed@gmail.com

ROBERT F. KENNEDY, JR. (*pro hac vice*)
MARY HOLLAND (*pro hac vice*)
Children's Health Defense
1227 North Peachtree Parkway
Suite 202
Peachtree City, GA 30269
Telephone: (917) 743-3868
mary.holland@childrenshealthdefense.org

Counsel for Appellant

## OVERVIEW

Recent disclosures of highly relevant 2020-2022 communications between the federal government (the Centers for Disease Control and Prevention ("CDC") in particular) and Appellee META PLATFORMS, INC. ("Meta" or "Facebook") compel Appellant CHILDREN'S HEALTH DEFENSE ("CHD") to bring this supplemental motion. CHD hereby asks this Court to take judicial notice of Meta's and the CDC's August 26, 2022 document production in response to the Plaintiff-States Missouri and Louisiana's subpoenas duces tecum in *Missouri, et al., v. Biden, et al.,* No. 3:22-CV-01213 (W.D. La. May 5, 2022).[1] Illustrative excerpts from that production are attached hereto.

---

[1] In its July 22, 2022 FRAP 28(j) letter, CHD informed this Court of the Louisiana district court order which authorized the Plaintiff-States' discovery requests of federal government officials and agencies, and social media platforms including Facebook, and CHD's expectation that "significant pertinent material may be forthcoming shortly as a consequence of the Order." (Dkt. #62 at 2.) On August 31, 2022, the Plaintiff-States filed voluminous documents with the district court as exhibits in connection with their ongoing discovery dispute with the federal government defendants. *Missouri, et al., v. Biden, et al.*, No. 3:22-CV-01213 (W.D. La. August 31, 2022, Dkt. ##71, 71-1 to 71-12). Like its recent motion for judicial notice of CDC FOIA records, Dkt. # 64-1, 67, CHD's supplemental request is timely and proper under Rule 201 of the Federal Rules of Evidence, and Rule 27 of the Federal Rules of Appellate Procedure. Though unusual, CHD's two post-hearing motions warrant this Court's consideration.

These newly-produced records underscore not merely the "plausibility"[2] of Plaintiff's allegation of the COVID news censorship partnership between Meta and the CDC, but constitute proof that this partnership exists; that Mr. Zuckerberg actively authorizes Meta's participation; and that under their "partnership," Meta "relies upon" the CDC to have final say on particular claims or viewpoints about COVID-19 and the CDC's own response to the pandemic on Meta's platforms under Meta's evolving COVID-19 terms of service. There can be no clearer example of the government picking winners and losers in the marketplace of ideas with Meta serving, for reasons of its own commercial interest, as the government's willing servant and accomplice. *See, e.g.*, *Mathis v. PG&E*, 891 F.2d 1429, 1443 (9th Cir. 1989) (reversing 12(b)(6) dismissal where privately-owned nuclear plant excluded employee pursuant to an alleged "informal policy" that federal officials pushed on the nuclear plant).

For context, this Court may consider this excerpt summarizing the Plaintiff-States' August 31, 2022 discovery statement:

> Secretary Mayorkas of DHS commented that the federal Government's efforts to police private speech on social media are

---

[2] CHD's submissions meet the operative 12(b)(6) standard. "But so long as the plaintiff alleges facts to support a theory that is *not facially implausible*, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds." *Hartman v. Gilead Scis., Inc.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (emphasis supplied).

> occurring "across the federal enterprise." Doc. 45, ¶ 233. It turns out that this statement is true, on a scale beyond what Plaintiffs could ever have anticipated. The limited discovery produced so far provides a tantalizing snapshot into a massive, sprawling federal "Censorship Enterprise," which includes dozens of federal officials across at least eleven federal agencies and components identified so far, who communicate with social-media platforms about misinformation, disinformation, and the suppression of private speech on social media—all with the intent and effect of pressuring social-media platforms to censor and suppress private speech that federal officials disfavor. The discovery provided so far demonstrates that this Censorship Enterprise is extremely broad, including officials in the White House, HHS, DHS, CISA, the CDC, NIAID, and the Office of the Surgeon General; and evidently other agencies as well, such as the Census Bureau, the FDA, the FBI, the State Department, the Treasury Department, and the U.S. Election Assistance Commission. And it rises to the highest levels of the U.S. Government, including numerous White House officials.
>
> [. . .]
>
> Discovery received so far indicates that a veritable army of federal bureaucrats are involved in censorship activities "across the federal enterprise." They include the 45 key custodians identified in Plaintiffs' (sic) interrogatory responses so far, 32 federal officials identified by Facebook so far [including eight current and former White House officials], eleven officials identified by YouTube, and nine identified by Twitter (many of which do not overlap, either with each other or Defendants' disclosures).

Dkt. #71 at 3, 9, 16 (Joint Motion) in *Missouri, et al., v. Biden, et al., supra*.

Thus, this Court confronts an urgent and unprecedented situation raising grave First Amendment concerns in CHD's appeal. With each new document production in other cases, the evidence mounts that Meta and federal officials and agencies are actively engaged in secret, direct communications to censor the

American public's (and in particular, CHD's) free speech rights on myriad topics related to COVID-19, vaccines, and criticism of the government itself. Moreover, Meta's pleadings should be viewed with considerable skepticism in light of their recent admissions in *Missouri v. Biden*.[3]

This Court should reverse the district court's dismissal order and remand CHD's case[4] for expedited discovery and adjudication of well-pleaded and now substantially confirmed First Amendment and RICO/Lanham Act claims.

## INVENTORY OF NOTICEABLE DOCUMENTS

1. The extent of the joint action censorship partnership between Meta and the CDC, among other federal entities within HHS and DHS.

The censorship partnership between Meta and the federal government goes all the way to the top. As the Plaintiff-States note:

---

[3] *See, e.g.*, Dkt. #34 at 33 (Meta argues that "The CDC's terms provide no concrete rule for determining what qualifies as 'vaccine misinformation' or 'vaccine hesitancy.' Rather, translating those general terms into an actionable decision with respect to particular content would have required the exercise of professional judgment."); at 37 (arguing that "None [of CHD's allegations] suggests any agreement to take any particular action (to fact-check, restrict, or otherwise) with respect to any specific information—and certainly not CHD's specific information on Facebook.")

[4] CHD's operative complaint alleges these facts in more than legally sufficient detail, and further amendment need not be required. *See* 3-ER-290-568 (Second Amended Complaint); 2-ERT-314 (First Supplement); 2-ER-151 (Second Supplement).

> In March 2020, Mark Zuckerberg provided Dr. Fauci with his personal cell phone number, demonstrating the opportunity for follow-up phone conversations. And on August 28, 2022, Meta disclosed Dr. Fauci in its list of 32 federal officials who may have communicated with Meta about content modulation on Facebook and Instagram.

Dkt. #71 at 24 (Joint Motion) in *Missouri, et al., v. Biden, et al., supra*.

The censorship partnership is routine and ongoing. To quote the state's brief, "Officials at HHS routinely flag content for censorship, for example, by organizing weekly "Be On The Lookout" meetings to flag disfavored content, Exh. 6; sending social media platforms lengthy lists of examples of disfavored posts to be censored, *Missouri*, Exh. 6, at 21-22; serving as privileged "fact checkers" whom social-media platforms consult about censoring private speech, *Missouri*, Exh. 7; and receiving detailed reports from social-media companies about so-called "misinformation" and "disinformation" activities online, *Missouri*, Exh. 4. (Dkt. 71, 9-10.)

Additionally, Facebook trained CDC and Census Bureau officials on how to use a "Facebook misinfo reporting channel," which allows privileged and expedited transmittal for execution of the CDC's and the Census Bureau's claims that content should be censored. Facebook instructed the officials about how to access Facebook's "Content Request System" by logging in to a secure, Facebook portal, (www.facebook.com/xtakedowns/login).

2. The extent of federal oversight and pressure on Meta to censor CHD and its Chairman, Mr. Kennedy, as identified sub nom. "Disinfo Dozen."[5]

As the Plaintiff-States Attorney Generals put it in their discovery brief:

> After President Biden publicly stated (about Facebook) on July 16, 2021, that "They're killing people," a very senior executive at Meta (Facebook and Instagram) reached out to Surgeon General Murthy to engage in damage control and appease the President's wrath. Ex. 4, at 1. Soon thereafter, the same Meta executive sent a text message to Surgeon General Murthy, noting that "it's not great to be accused of killing people," and expressing that he was "keen to find a way to deescalate and work together collaboratively." Ex. 5, at 1. Such "deescalation" and "working together collaboratively," naturally, involved increasing censorship. One week after President Biden's public accusation, on July 23, 2021, that senior Meta executive sent an email to Surgeon General Murthy stating, "I wanted to make sure you saw the steps we took just this past week to adjust policies on what we are removing with respect to misinformation, as well as steps taken to further address the 'disinfo dozen': we removed 17 additional Pages, Groups, and Instagram accounts tied to the disinfo dozen...." Ex. 3, at 2.[6] Again, on August 20, 2021, the same Meta executive emailed Murthy to assure him that Facebook "will shortly be expanding our COVID policies to further reduce the spread of potentially harmful content on our platform. These changes will apply across Facebook and Instagram," and they included "increasing the strength of our demotions for COVID and vaccine-related content," and "making it easier to have Pages/Groups/Accounts demoted for sharing COVID and vaccine-related misinformation." Ex. 4, at 3. In addition, that

---

[5] CHD has alleged that all of its censored content is true or protected opinion or criticism of government. CHD avers that the term "disinformation dozen" is a canard first coined by the Center for Countering Digital Hate. Mr. Kennedy has the distinction of being listed as #2 on CCDH's "Disinfo Dozen" list.

[6] The same email notes, "We also expanded the group of false claims that we remove, to keep up with recent trends of misinformation that we are seeing." *Missouri*, Exh. 3 at 2.

> senior Meta executive sent a "Facebook bi-weekly covid content report" to Surgeon General Murthy to White House official Andrew Slavitt, evidently to reassure these federal officials that Facebook's suppression of COVID-19 "misinformation" was aggressive enough. Ex. 4, at 6-19.

Dkt. #71 at 7 (Joint Motion) in *Missouri*, *et al.*, *v. Biden*, *et al.*, *supra*.

In the August 20, 2021 email, the Meta executive added,

> We've specifically investigated the people sometimes identified in the media as the 'Dis info Dozen'. [sic] We've applied penalties to some of their website domains as well so [sic] any posts, including their website content, are moved lower in news feed.

*Missouri*, Exh. 4, at 4.

The email notes,

> In total, we have removed three dozen Pages, groups and Facebook or Instagram accounts linked to these 12 people, including at least one linked to each of the 12 people, for violating our policies.

*Id*.

3. <u>Meta gives the CDC the "final say" on whether particular claims, subjects or viewpoints about COVID-19 will be censored under Meta's evolving COVID-19 terms of service.</u>

As documents disclosed in the *Missouri v. Biden* action reveal, Meta "relied upon" the CDC for its supposed expertise and took direction from the CDC in formulating content on vaccines. The documents evidence not merely collusion with the CDC but that Meta granted CDC the authority to set standards for permissible and impermissible vaccine content on Meta's platforms.

For example, on November 20, 2021, Meta wrote to CDC requesting that CDC review language that Meta drafted (based on language CDC supplied earlier) promulgating advice about when and under what circumstances to take vaccine and booster shots. Facebook in its email to CDC noted its reliance upon, and desired approval from, the CDC for its messaging: "Thanks so much for sending the language last night – I know you've said in the past we don't need approval for external language, **but always want to make sure we are staying on the straight and narrow**." (Emphasis added.) *Missouri*, Exh. 7 at 22. In a similar vein, Meta indicates that it will hold up operations until it gets CDC's approval. Thus, at the end of October, 2021, in anticipation of the upcoming Emergency Use Authorization ("EUA") of COVID-19 vaccines for children, Meta sought information from CDC on potential negative side effects and explained its reliance on CDC: "[W]e are holding on updating our Covid Information Center, FAQs on Covid, and our internal policies until we get the clarification on the highlighted questions below [concerning side effects]." *Missouri*, Exh. 7 at 29. Meta later adds: "Apologies for the badgering – we want to get this right and are relying on your expertise." *Missouri*, Exh. 7 at 28.

Meta's eagerness to take direction from CDC is further visible in emails about Meta's CrowdTangle content on vaccines. In an internal Meta email dated January 26, 2021, Meta thanks the employee responsible for these reports,

specifically remarking: "and do adjust if CDC has any suggestions for content." *Missouri*, Exh. 7 at 45. On February 1, 2021, Meta emailed its latest "CrowdTangle content insight report" to CDC, remarking: "As always please let us know if you have any questions or particular keyword/topics you'd like us to explore for the next report." *Missouri*, Exh. 7 at 45. Another "Crowd Tangle COVID-19 report" email to CDC, this one dated December 7, 2021, ends with an invitation to ask questions, and the caution, "as always, please do not share." *Missouri*, Exh. 2 at 2.

In sum, the emails in the *Missouri v. Biden* discovery documents available thus far prove the close working partnership between Meta and CDC. That it was a partnership to censor content is clear from a cloying, typically effusive email from Meta to CDC, dated February 11, 2022:

> Thank you so much for gathering the team to meet with us earlier this week, it was incredibly helpful. Your partnership is critical to us in making sure we can remove false and harmful claims about COVID-19 and vaccines on our platform. In following up to our meeting, I am sharing below the long list of claims that we <u>currently</u> remove related to the COVID vaccine because public health authorities such as the CDC have confirmed they are false and could contribute to imminent physical harm if believed….Our hope though is that we are able to receive as many confirmed debunkings from your team ahead of the FDA's [emergency authorization of Pfizer vaccine for children] announcement so that we can immediately begin removing this harmful content when the news hits.

Exhibit to CHD's supplemental Judicial Notice Motion.

Every day, Facebook and a handful of other private companies decide for hundreds of millions of Americans and people around the world what facts and opinions can be uttered, seen, and heard in the "modern public square." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1732 (2017). By express agreement with federal actors — through submission to coercive pressure and joint work — Meta chooses to censor speech challenging government orthodoxy on COVID-19 and vaccines. Meta inaccurately and disingenuously refers to such speech as "COVID misinformation," even when the speech is protected opinion or proves to be fact.[7] Federal actors tell Meta what counts as "COVID misinformation," identifying specific individuals, posts or facts that the government wants to block, and Meta then blocks them (as, for example, it blocked for months all content even suggesting that COVID might have been created in a lab in China—a lab apparently funded in part by the same United States health authorities telling Facebook what information counts as "misinformation"). If the First Amendment is to survive in this Brave New World, government actors cannot be permitted to enter into clandestine censorship partnerships with these

[7] As admitted by a senior Facebook executive and confirmed in leaked internal Facebook documents, Facebook knowingly censors true information and opinion when deemed capable of leading to "vaccine hesitancy." 2-ER-152-53, 160-179.

gatekeepers of the Internet—such as Meta—by inducing them and working with them to suppress disfavored speech.

## CONCLUSION

For all of these reasons, this Court should grant Appellant CHD's supplemental motion for judicial notice.

Dated: September 6, 2022

Respectfully submitted,

ROBERT F. KENNEDY, JR.
Founder and Chairman
Children's Health Defense

MARY S. HOLLAND
General Counsel
Children's Health Defense

ROGER I. TEICH

Counsel for Appellant
Children's Health Defense

## DECLARATION OF COUNSEL IN SUPPORT OF MOTION

I, ROGER TEICH, declare under penalty of perjury under the laws of the United States that the following is true and correct of my own knowledge:

I am a member of the State Bar of California and the Bar of the Ninth Circuit Court of Appeals. I am local counsel for Appellant CHD in this action. This declaration is made in support of CHD's motion for judicial notice. If called as a witness, I could and would testify competently to the facts herein, except where stated on information and belief.

The briefing on appeal is complete, and oral argument was held on May 17, 2022.

On August 31, 2022, I obtained a copy of the Plaintiff-States of Missouri and Louisiana's discovery statement and exhibits filed in *Missouri, et al., v. Biden, et al.*, No. 3:22-CV-01213 (W.D. La. May 5, 2022).

On information and belief, these documents have been generated by Meta, the CDC, and other social media platforms and government officials and agencies, in the normal course of business, and are normally contained in their files and records, subject (with certain exceptions) to production in response to subpoenas duces tecum. I could not have discovered these documents any sooner in the exercise of reasonable diligence because the Plaintiff-States publicly-filed and docketed them just seven days ago, on August 31, 2022.

Attached are true and correct copies of some illustrative documents from the Plaintiff-States' filed discovery statement and exhibits in *Missouri v. Biden*, which I obtained from PACER download. This Court can and should take judicial notice to include these records whose authenticity is undisputed and that may be considered admissions against interest by appellant Meta and its federal partners.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and that this declaration was executed in San Francisco, California on September 6, 2022.

ROGER I. TEICH