**No. 21-16210**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

CHILDREN'S HEALTH DEFENSE,
a Georgia non-profit organization,
*Plaintiff-Appellant*,

v.

META PLATFORMS, INC., a Delaware corporation;
MARK ZUCKERBERG, a California resident;
SCIENCE FEEDBACK, a French corporation;
THE POYNTER INSTITUTE FOR MEDIA STUDIES, INC.,
a Florida corporation; and DOES 1-20,
*Defendants-Appellees*.

---

Appeal from the Judgment of the United States District Court
for the Northern District of California, Case No. 3:20-cv-05787-SI
Honorable Susan Illston, United States District Judge

---

# APPELLANT'S FIFTH MOTION FOR JUDICIAL NOTICE

---

ROGER I. TEICH
Cal. State Bar No. 147076
290 Nevada Street
San Francisco, CA 94110
Telephone: (415) 948-0045
rteich@juno.com

JED RUBENFELD (*pro hac vice*)
1031 Forest Road
New Haven, CT 06515
Telephone: (203) 387-2505
rubenfeldjed@gmail.com

ROBERT F. KENNEDY, JR. (*pro hac vice*)
MARY HOLLAND (*pro hac vice*)
Children's Health Defense
1227 North Peachtree Parkway
Suite 202
Peachtree City, GA 30269
Telephone: (917) 743-3868
mary.holland@childrenshealthdefense.org

Counsel for Appellant

# TABLE OF CONTENTS

Page #

TABLE OF AUTHORITIES ........ ii

OVERVIEW ........ 1

DESCRIPTION OF JUDICIALLY NOTICEABLE MATERIAL ........ 2

ARGUMENT ........ 5

I. This Court may take judicial notice of Facebook's admissions. ........ 5

II. Facebook's admissions demonstrate the plausibility of CHD's state action claim. ........ 7

III. Facebook's admissions also cement the plausibility of CHD's fraud claims. ........ 10

CONCLUSION ........ 11

CERTIFICATE OF SERVICE ........ 12

# TABLE OF AUTHORITIES

**Federal Cases**

*5-Star Management, Inc. v. Rogers*,
940 F. Supp. 512 (E.D.N.Y. 1996)....................................................................6

*Abdul-Rahman v. City of New York* (No. 10 Civ. 2778),
2012 U.S. Dist. LEXIS 45653 (E.D.N.Y. Mar. 30, 2012)..................................6

*Aldini AG v. Silvaco, Inc*. (No. 2-cv-06423-JST),
2022 U.S. Dist. LEXIS 243269 (N.D. Cal. May 17, 2022)................................6

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc*.,
99 F. Supp. 3d 1110 (C.D. Cal. 2015)...............................................................5

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963)..............................................................................................8

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
531 U.S. 288 (2001)........................................................................................7, 8

*Crowe v. County of San Diego*,
608 F.3d 406 (9th Cir. 2010)...............................................................................8

*DeGroot v. United States*,
786 Fed. Appx. 638 (9th Cir. 2019) ...................................................................7

*Disability Rights Mont., Inc. v. Batista*,
930 F.3d 1090 (9th Cir. 2019).............................................................................7

*Dubner v. City & Cnty. of San Francisco*,
266 F.3d 959 (9th Cir. 2001)...............................................................................10

*Hernandez v. Wells Fargo & Co*. (No. 18-cv-07354 WHA)
2019 U.S. Dist. LEXIS 114817 (N.D. Cal. July 10, 2019) ............................5, 6

*Hoye v. City of Oakland*,
642 F. Supp. 2d 1029 (N.D. Cal. 2009),
*rev'd on other grounds*, 653 F.3d 835 (9th Cir. 2011).......................................6

*Missouri v. Biden*,
No. 23-30445 (5th Cir.) ...........................................................................*passim*

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009)..........7

*O'Handley v. Weber*,
62 F.4th 1145 (9th Cir. 2023)..........9

*Rimac v. Duncan*,
319 F. Appx. 535 (9th Cir. 2009)..........8

*Skinner v. Railway Labor Executives' Assn.*,
489 U.S. 602 (1989)..........8

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011)..........10

*United States v. Davis*,
482 F.2d 893 (9th Cir. 1973)..........8

*United States v. Howard*,
381 F.3d 873 (9th Cir. 2004)..........5, 7

*United States v. Rosenow*,
250 F. 4th 715 (9th Cir. 2022)..........8

**Federal Statutes**

47 U.S.C.
§ 230..........9
§ 230(c)(2)(A)..........9

**Federal Rules of Civil Procedure**

Rule 12(b)(6)..........1

## OVERVIEW

It must surely be rare, during the pendency of a Rule 12(b)(6) appeal, for documents to emerge in which a defendant admits the core allegations in dispute—the very allegations deemed so implausible by the Court below that they could not survive a motion to dismiss. Yet that is precisely what has happened here.

As the Court knows, Plaintiff Children's Health Defense ("CHD") alleges that Facebook's censorship of constitutionally protected COVID-related speech is state action because, among other things, it is the result of significant pressure from federal actors. This allegation has been repeatedly denied by Facebook under the theory that Facebook's censorship decisions have simply reflected the company's independent formulation and enforcement of its own "misinformation" policies. Yet in newly revealed internal Facebook emails, produced in response to a congressional subpoena, Facebook expressly admits that it censored constitutionally-protected, COVID-related speech ***not in violation of Facebook policies*** "***because we were under pressure from the [A]dministration***." *See* ECF No. 161 at 46, *Missouri v. Biden*, No. 23-30445 (5th Cir.) (excerpts of its Appendix are attached hereto as Exh. "A").[1]

Together with the well-pleaded allegations in this case and the previously-submitted noticeable materials, these stunning new Facebook admissions leave no

---

1 All citations to Exhibit "A" refer to the court's ECF-stamped pagination at the top of ECF No. 161.

doubt that Plaintiff CHD has stated a plausible state action claim for injunctive and declaratory relief and fraud claims for monetary relief, and a concomitant right to discovery and expeditious process. Accordingly, with apologies once again for adding to the Court's burden, CHD respectfully asks this Court to take judicial notice of the materials described herein and attached hereto.

## **DESCRIPTION OF JUDICIALLY NOTICEABLE MATERIAL**

On August 7, 2023, several Members of the United States House of Representatives filed an amicus brief in a case currently pending before the Fifth Circuit. *See* Exh. A. As the Members of Congress state, "The House Judiciary Committee and the Weaponization Subcommittee have been conducting an ongoing investigation into how and to what extent the executive branch has coerced or colluded with social media companies to censor speech." (*Id*. at 1.) As part of this investigation, "[t]he House Judiciary Committee subpoenaed internal documents from Meta, the parent entity of Facebook and Instagram." (*Id*. at 6.) Numerous documents produced by Meta in response thereto are appended as exhibits to the Members' amicus brief. (*See id.* at Exhs. 1-13, 17-19.)

The materials submitted by CHD in this motion are a small fraction of those documents, the authenticity of which Meta has not disputed. Among other highly relevant disclosures, these Facebook documents: (1) state repeatedly that the Administration is putting "significant pressure" on the company to censor COVID-

related speech, including speech that "does not violate [Facebook] policies"; (2) state that Facebook senior executives are "keen" to show themselves "responsive" to such pressure: (3) admit that Facebook has censored such speech "because" of such "pressure"; and (4) show Facebook and federal officials specifically discussing censorship of CHD and CHD's then-chairman and chief spokesman, Robert F. Kennedy, Jr.:

- In a July 2021 email, Facebook's President of Global Affairs Sir Nicholas ("Nick") Clegg asked another Facebook executive why Facebook had been blocking claims that COVID originated or might have originated in a laboratory. The executive responded, "***Because we were under pressure from the administration.***" (46) (emphasis added). The same Facebook executive also admitted: "***We shouldn't have done it.***" (*Id.*) (emphasis added).

- Another July 2021 email notes that "***Sheryl [Sandberg, then-Facebook COO] is keen that we continue to explore some moves that we can make to show that we are trying to be responsive to the W[hite] H[ouse].***" (103) (emphasis added).

- In another July 2021 email, Clegg warned that "our current course – in effect explaining ourselves more fully, but not shifting on where we draw the lines or on the data we provide . . . is ***a recipe for protracted and increasing acrimony with the WH*** as the vaccine roll out continues . . . . ***Given the bigger fish we have to fry with the Administration – data flows etc – that doesn't seem a great place for us to be***, so grateful for any further creative thinking on how we can be ***responsive to their concerns***." (103) (emphasis added).

- In April 2021, an internal Facebook note drafted for "Mark [Zuckerberg, Facebook CEO] and Sheryl [Sandberg]" stated, "We are facing **continued pressure** from external stakeholders**, including the White House . . . ,** to ***remove*** **more COVID-19 vaccine discouraging content."** (51) (italics in original; boldface added).

- The note carefully distinguished between allegedly false content potentially violating Facebook policies and mere "vaccine discouraging" or "vaccine hesitancy" content that "***does not otherwise violate FB's Covid19 policies.***" (52) (emphasis added). The note admits that censoring such content

will "***remove[ ] true content and personal opinions [and] reduces public conversation on important issues.***" *Id*. (emphasis added). Nevertheless, "***the White House … continues to put significant pressure*** on removing more **[**vaccine hesitancy content]." *Id.* (emphasis added).

- In an April 17, 2021 email to Clegg and others, Brian Rice, a Facebook executive, noted that Facebook had (in response to White House pressure) significantly demoted a Tucker Carlson video despite admitting that "***we reviewed [Carlson's video] in detail and it does not violate [Facebook] policies.***" (57) (emphasis added.)

- In an April 18, 2021 email, Clegg reported on an hour-long telephone call earlier that evening with senior White House aide Andrew Slavitt, who informed Clegg that a senior advisor to President Biden was "outraged" "that [Facebook] did not remove" a meme reflecting satirical content about the Covid vaccine that disturbed the administration. (57) Although Clegg warned Slavitt that removing satirical comment "***would represent a significant incursion into traditional boundaries of free expression in the US***," Slavitt remained unimpressed, insisting that the content "inhibits confidence in Covid vaccines." *Id.* (emphasis added).

- Material prepared for Clegg prior to a July 2021 meeting with the Surgeon General noted that "***[t]he Surgeon General wants [Facebook] to remove true information about [vaccine] side effects.***" (109) (emphasis added).

- In another email that same month, Clegg wrote to Sandberg that **"*what the White House appears to want us to remove ranges from humor to totally non-violating chatter about vaccines.*"** (106) Clegg implies that Facebook will accede if the Surgeon General insists: "***We don't need to decide everything at once – we should wait to see what Surgeon Gen tells me on Fri before deciding how/whether we need to make any bigger moves.***" (106).

- In a July 2021 telephone call among the U.S. Surgeon General's Office and Facebook employees, a Facebook employee confirmed that Facebook was demoting content "***[t]hat's not false information***." (114) As Facebook explained, "***For example, someone sharing negative side effects posts. Similarly, posts questioning whether you should get a vaccine under a mandate, whether it's government overreach. We demote those. That's not false information, but it leads to a vaccine negative environment***." (114) (emphasis added).

- During this call with the Surgeon General's Office, a Facebook employee specifically referred to censoring Robert F. Kennedy, Jr. as an example. (113).

- A July 22, 2021 email sent by a Facebook employee to other employees with the subject line "Re: Surgeon General" specifically refers to CHD as a Facebook user that could be "blackhole[d]" in response to the Surgeon General's demands, which (with another user) would "remove" "**>66 million** pieces of content." (102) (emphasis in original).

- An August 6, 2021 email from a Facebook employee to other employees entitled "Urgent help assessing misinfo/misinfo adjacent Policy options," noted that **"Leadership met today and decided we should move forward on our 4 recommendations**" for new, aggressive censorship policy options in response to demands from the Biden Administration. (90) (emphasis added).The email explains how these recommendations will work by using Mr. Kennedy as an example. (91) The author commented: "We recommend this as a stop-gap measure ***specifically targeting Disinfo Dozen*[2] *assets.*" (*Id.* (emphasis added).)

## ARGUMENT

### I. *This Court may take judicial notice of Facebook's admissions*.

Party admissions and documents lodged in another judicial proceeding may be judicially noticed:

> Judicially noticeable facts include "court records from another case" and "party admissions." *See Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1125 (C.D. Cal. 2015); *Hernandez v. Wells Fargo & Co.*, No. 18-cv-07354 WHA, [2019 U.S. Dist. LEXIS 114817, at *14-15] (N.D. Cal. July 10, 2019); *see also United States v. Howard*, 381 F.3d 873, 876 (9th Cir. 2004) (taking judicial notice of the facts from a suppression hearing).

[2] As the Court is aware, the "Disinformation Dozen" is a defamatory label referring to 12 individuals, including Mr. Kennedy, accused *without any evidentiary basis* of disseminating COVID disinformation online.

*Aldini AG v. Silvaco, Inc*., No. 21-cv-06423-JST, 2022 U.S. Dist. LEXIS 243269, at *9 (N.D. Cal. May 17, 2022). *See also, e.g.*, *Hoye v. City of Oakland*, 642 F. Supp. 2d 1029, 1039 n.7 (N.D. Cal. 2009) ("The Court *does* take judicial notice of Plaintiff's testimony in his criminal case, as it is a party admission.") (original emphasis), *rev'd on other grounds*, 653 F.3d 835 (9th Cir. 2011).

Indeed, courts have held that "party admissions may be judicially noticed ***for the truth of the matter*** if requested by the opposing party." *Hernandez*, 2019 U.S. Dist. LEXIS 114817, at *14 (emphasis added). *See also, e.g.*, *Abdul-Rahman v. City of New York*, No. 10 Civ. 2778, 2012 U.S. Dist. LEXIS 45653, at **8-9 (E.D.N.Y. Mar. 30, 2012) (noticing criminal trial transcripts as party admissions made in public records whose authenticity is not in dispute); *5-Star Management, Inc. v. Rogers*, 940 F. Supp. 512, 519 (E.D.N.Y. 1996) (finding that, under the circumstances presented, it was appropriate to take judicial notice, for the truth of the matter asserted, of a crucial admission made by the plaintiff in a separate litigation).

Taking notice of a party's statements for the substance of the matter asserted is especially appropriate where, as here, the Court is not being asked to accept the statements as conclusive ***proof*** of the matter asserted, but only as non-frivolous ***evidence*** that could be submitted to a fact-finder at an appropriate time, adding plausibility to plaintiff's allegations and thus avoiding an improper, premature

dismissal, or a miscarriage of justice. This Court has done just that on at least two prior occasions. *See Howard*, 381 F.3d at 876 (noticing plaintiff's statement in a separate proceeding that he was under the influence of a narcotic at the time he entered a guilty plea not as proof of incompetence but as *non-frivolous* evidence of incompetence such that his ineffective assistance of counsel claim could not be dismissed without an evidentiary hearing); *DeGroot v. United States*, 786 Fed. Appx. 638, 642 (9th Cir. 2019) (unpubl.) (taking notice of criminal trial transcripts to "note ***the existence of facts that may be presented to a jury***") (emphasis added).

## II. ***Facebook's admissions demonstrate the plausibility of CHD's state action claim***.

In order to defeat the Defendants' 12(b)(6) motion for dismissal, CHD needs to show only that its factual allegations, as well as any judicially noticeable material, with all reasonable inferences drawn in CHD's favor, plead a "plausibly suggestive" claim. *Disability Rights Mont., Inc. v. Batista*, 930 F.3d 1090, 1096 (9th Cir. 2019) (quoting *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009)). CHD has met and exceeded that standard here.

As CHD has noted in earlier submissions, the legal tests for state action are additive and overlapping. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001). Case law establishes that the following factors militate decisively in favor of a state action finding: coercive pressure from governmental

actors, *see Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963); "willful participa[tion] in joint activity with the State or its agents," *Brentwood*, 531 U.S. at 296; "active participation or encouragement" by the government, *United States v. Rosenow*, 250 F. 4th 715, 733 (9th Cir. 2022); "work[ing] together" pursuant to agreement or a "meeting of the minds," *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (state action claim stated if evidence suggests even a "tacit 'meeting of the minds'"); *Rimac v. Duncan*, 319 F. Appx. 535, 537 (9th Cir. 2009) (unpubl.) (state action claim stated where plaintiff "alleged that [private party and government official] met, agreed to remove the trees, and came to a plan"); *United States v. Davis*, 482 F.2d 893, 898 (9th Cir. 1973) (state action shown where FAA and the airlines "worked together to put the system into operation at the nation's airports" as part of a "cooperative effort"); and a federal regulation granting immunity from state law liability where a private company takes action that the government "has made plain . . . its strong preference for," *Skinner v. Railway Labor Executives' Assn*., 489 U.S. 602, 615 (1989).

Under this case law, the relevance of Facebook's newly revealed admissions is manifest. In these documents, Facebook admits (contrary to its repeated denials) that, due to federal "pressure," it censored COVID-related speech that was not false and did not violate Facebook policies. The documents further show Facebook agreeing to serve the federal government's censorship goals and working closely

together with the federal government to censor speech disfavored by the Administration. In addition, the documents make specific reference to Facebook's treatment of CHD and Mr. Kennedy as illustrations of this censorship. And, as CHD has shown in past submissions, all these communications occurred against the backdrop of repeated, public federal threats and of Section 230's immunization of Facebook from state law liability for censoring "constitutionally protected," "objectionable" content. 47 U.S.C. § 230(c)(2)(A).

As this Court stated earlier this year, in a case against Twitter:

> A constitutional problem would arise if Twitter had agreed to serve as an arm of the government, thereby fulfilling the State's censorship goals. As explained above, however, O'Handley has not plausibly alleged that Twitter removed his posts to advance the OEC's purported censorship goals as opposed to Twitter's own [policies].

*O'Handley v. Weber*, 62 F.4th 1145, 1159 (9th Cir. 2023). The instant case squarely presents the "constitutional problem" the *O'Handley* Court recognized: as CHD has alleged in detail, and as Facebook's new admissions make undeniably plausible, Facebook precisely did "agree[ ] to serve as an arm of the government," censoring COVID-related speech "to advance [the Administration's] censorship goals as opposed to [Facebook's] own [policies]."

Finally, the documents show that, on August 6, 2021, after various internal discussions earlier that Summer, which included or referenced "Mark" [Zuckerberg] and "Sheryl" [Sandberg], "Leadership met today and decided we

should move forward on our 4 recommendations" for new, aggressive policy options in response to demands from the Biden Administration. (90). These documents thus plausibly show -- contrary to what the district court deemed implausible -- Defendant Zuckerberg personally "setting in motion a series of acts by others" *i.e.*, his Facebook subordinates, which has injured, and continues to injure CHD. *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (citing *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001)).

## III. *Facebook's admissions also cement the plausibility of CHD's fraud claims*.

As this Court also knows, CHD's statutory claims allege that Facebook committed fraud by falsely representing to Facebook's users that the company censors only "false" COVID-related speech. As alleged by CHD, this misrepresentation has inflicted substantial provable monetary damages on CHD because it (falsely) communicated to users that CHD and Mr. Kennedy—both the targets of Facebook censorship—were engaging in false COVID-related speech. Facebook permanently deactivated CHD's "donate" button and encouraged users to "unfollow" CHD under the same false pretenses, causing losses to CHD's membership fees, donations and online purchases. In the documents submitted here, Facebook admits that it has in fact—just as CHD has alleged—been censoring COVID-related speech (including wholly accurate information and

opinion) not because Facebook believed it to be false, but because Facebook (pressured by the government and working jointly with the government) deemed such speech capable of producing "vaccine hesitancy." These admissions thus cement the factual plausibility of CHD's statutory fraud claims and underscore the importance of this issue, also: that Facebook's material deception of its own users must sound in civil fraud when it causes monetary injury to a third party user (CHD) on its platforms. Facebook has argued consistently that CHD cannot state a RICO fraud claim because at most, Facebook only misled its users, from whom it takes nothing of value. These documents show the plausibility of CHD's allegations that Facebook committed a pattern of flagrant falsehoods intended to disparage and injure CHD in its trade or business (along with other targets of its censorship), which states viable claims under both RICO and the Lanham Act.

## CONCLUSION

For the foregoing reasons, CHD respectfully requests that this Court grant CHD's fifth motion for judicial notice and reverse the District Court's dismissal of this action.

Dated: August 25, 2023

Respectfully submitted,

ROGER I. TEICH
Counsel for Appellant
Children's Health Defense

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2023, I electronically filed the foregoing with the Clerk for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

ROGER I. TEICH
Counsel for Appellant
Children's Health Defense